IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:20cr31

FERNARD LEE JORDAN,

    Defendant.

## MEMORADUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE AND MEMORADUM IN SUPPORT (ECF No. 13) (the
"MOTION").  Upon review of the parties' briefing, as well as the
arguments presented, and for the reasons set forth on the record
at the August 5, 2020 hearing, and for the reasons set forth below,
the MOTION will be denied.

## BACKGROUND

Fernard Lee Jordan ("Fernard") has been charged with
Possession with Intent to Distribute Heroin and Fentanyl in
violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Indictment at 1,
ECF No. 10.[1] On September 17, 2019, a search warrant was issued
authorizing the search of Fernard's home, 673 Westover Woods Circle
in Richmond, Virginia.   The search warrant was executed on

---

[1] The defendant is referred to as Fernard (his first name) because
in the search warrant affidavit Fernard's son, Faheem, is sometimes
referred to as "JORDAN."  The use of first names here will avoid
confusion.

September 26, 2019 and the MOTION seeks to suppress items found during the search. The items discovered during that search form the basis of the charges in the Indictment.

In May 2019, a task force consisting of Drug Enforcement Administration agents and members of the Chesterfield County Police force (the "task force") were investigating drug trafficking in heroin and cocaine in the Richmond Metropolitan area. Affidavit for Search Warrant ¶ 7, ECF No. 17-1. The investigation identified Faheem, who had previous felony convictions for drug offenses, as a significant suspect in the drug trafficking under investigation. Id. ¶¶ 7, 9. The search warrant was issued on the basis of the surveillance of, and conduct engaged in, by Fernard's son, Faheem Ali Jordan ("Faheem"). Hence, the assessment of probable cause for the warrant focuses on Faheem's conduct and the observations of law enforcement officers during their surveillance of Faheem.

During the course of the investigation, the task force learned that, in multiple encounters with the law enforcement (the most recent being on July 27, 2019), Faheem had identified his primary residence as 673 Westover Woods Circle. Affidavit for Search Warrant ¶ 10, ECF No. 17-1. In addition, the Virginia Department of Motor Vehicles confirmed that, on his driver's license, Faheem listed his primary residence as 673 Westover Woods Circle. Id. ¶ 11. The investigation showed that Faheem's father, Fernard, owned

2

the residence at 673 Westover Woods Circle, and that Fernard was a federal probationer who previously had been convicted of drug and firearms offenses.  Id. ¶ 16.

Also, during the investigation, Faheem sold heroin and cocaine to a confidential source ("CS") in three controlled sale transactions.  Affidavit for Search Warrant ¶ 24, ECF No. 17-1. Those transactions occurred on May 9, June 13, and August 20, 2019. Id. ¶¶ 13, 18, 19.  During those controlled purchases, the task force officers noticed facts that connected Faheem's drug trafficking with Fernard's residence which, of course, Faheem also had claimed as his own.  According to the sworn facts presented to the magistrate judge issuing the search warrant, the task force officers observed the following.

On May 9, 2019, the CS purchased a quantity of heroin from Faheem.  Affidavit for Search Warrant ¶ 13, ECF No. 17-1.  During this transaction, Faheem was driving a Blue BMW that was registered to Fernard.  Id. ¶ 14.  Faheem listed his primary residence as the 673 Westover Woods residence when applying for his driver's license.  Id. ¶ 11.  On May 24, 2019, agents again observed Faheem driving the BMW that was registered to Fernard.  Id. ¶ 17.  Then, on June 13, 2019, the CS purchased a quantity of heroin and cocaine from Faheem.  Id. ¶ 18.

On August 20, 2019, the CS purchased a third quantity of heroin and cocaine from Faheem.  Affidavit for Search Warrant ¶

19, ECF No. 17-1. During this controlled buy, Faheem was driving a rented silver Ford Edge. Id. After the purchase, Faheem drove that vehicle to a parking deck of Homewood Suites Richmond Downtown. Id. Agents learned that Faheem was a registered guest in room 806 of that hotel. Id. ¶ 20.

On August 22, 2019 and August 23, 2019, law enforcement officers observed the Blue BMW owned by Fernard but often driven by Faheem parked in front of the 673 Westover Woods Circle. Affidavit for Search Warrant ¶¶ 21, 22, ECF No. 17-1. On September 6, 2019, and again on September 9, 2019, law enforcement officers observed Fernard's blue BMW parked in the parking deck of the Homewood Suites Richmond Downtown where Faheem was a registered guest. Id. ¶ 23.

On September 17, 2019, law enforcement officers obtained a search warrant to search 673 Westover Woods Circle, Richmond, Virginia, a location that both Fernard and Faheem had claimed to be their residence. The Search Warrant Authorized the search and seizure of:

> Monies, ledgers, documents, cell phones, electronic media storage devices, computers and the data contained within. Scales, firearms, items utilized in the processing, packaging and distribution of illegal drugs. Drugs and drug paraphernalia as defined in the 1970 drug control act of Virginia.

Search Warrant at 3, ECF No. 17-1.

The search warrant was issued by a magistrate judge and supported by the affidavit of Blaine Davis, a Task Force Officer with the Drug Enforcement Administration/Narcotics Corporal Detective with the Chesterfield County Virginia Police Department ("Davis"). Davis submitted that "probable cause exists to conclude that [Faheem Jordan] is a narcotics distributor and that the [673 Westover Woods residence is] controlled and repeatedly utilized by [Faheem Jordan] to facilitate the distribution, processing and storage of heroin, cocaine and proceeds from the sale of the heroin and cocaine." Affidavit for Search Warrant ¶ 26, ECF No. 17-1. The factual information recited about the conduct and surveillance of Faheem, his use of Fernard's car while trafficking in drugs, and his declared residence were included in the affidavit that supported the search warrant. Affidavit for Search Warrant ¶ 26, ECF No. 17-1

Davis, who obtained, and attested, the search warrant was a law enforcement officer who had twenty-two years of experience. In support of the search warrant, Davis swore that, on the basis of his experience, training and expertise, he knew:

a. that narcotics traffickers often utilize residences of their own and others under their control to ship/store illegal narcotics, collect proceeds and transfer proceeds from the sale of illegal drugs;

c. that narcotics traffickers often maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing

narcotics   business,   or   as   narcotics proceeds;

d. that it is common for narcotics dealers to secret contraband, proceeds of narcotics sales   and/or   records   of   narcotics transactions,   narcotics   sources,   and narcotics customers in secure locations within   residences,   businesses,   offices, garages, storage buildings, safes, valuts, safe deposit boxes, vehicles . . . in order to conceal such items from law enforcement authorities;

e. that   persons   involved   in   narcotics trafficking conceal caches of narcotics, large   amounts   of   currency,   financial instruments, . . . proceeds of narcotics transactions, . . . in their residences, . . . safes, . . . ;

f. that narcotics dealers often purchase expensive   vehicles,   businesses,   and residences with the proceeds from their drug transactions, and that they often keep these items registered in the names of other trusted individuals in order to avoid discovery by law enforcement;

Affidavit for Search Warrant ¶ 3, ECF No. 17-1.

On September 26, 2019, Faheem was arrested at an Exxon gas station on outstanding state drug warrants. Report of Investigation at 1, ECF No. 19-1. Following Faheem's arrest, the search warrant for the 673 Westover Woods Circle address was executed. Id. While executing the search warrant at that residence, the police found "indicia of Fernard's occupancy in the master bedroom." Def.'s Mot. to Suppress Evid. at 3, ECF No. 13. The indicia was a checkbook in Fernard's name in the master

bedroom.   Government's Resp. to Def.'s Mot. to Suppress at 5.   In the master bedroom, the police also found a baggie containing a brown substance inside a tote bag and a digital scale in the top drawer of Jordan's bedside table.   Id. at 3-4.   After breaking open and searching a locked safe in the same bedroom, police recovered 391 grams of heroin, 457 grams of cocaine, a Glock handgun, and $19,000.   Id. at 4.   A bullet was also found on a shelf and a firearm was found in a different bedroom in the house. Id.   Fernard was arrested after the search.

## LEGAL STANDARD

The Fourth Amendment protects people from unreasonable searches and seizures.   U.S. Const. amend. XIV.   The Amendment requires that search warrants be issued only upon a showing of probable cause, "supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."   Id.   Thus, the touchstone of the Fourth Amendment is reasonableness.

Evidence obtained in violation of the Fourth Amendment may be subject to suppression under the exclusionary rule, "meaning that it cannot be used in a criminal proceeding against the victim of the illegal search and seizure."   United States v. Harris, 215 F. App'x 262, 269 (4th Cir. 2007) (citing United States v. Perez, 393 F.3d 457, 460 (4th Cir. 2004)).   "Determining whether the

exclusionary rule applies in this case involves a two-step inquiry. [The Court must] consider (1) whether a substantial basis existed for a finding of probable cause to conduct the search, and (2) if probable cause did not exist, whether the court could nevertheless uphold the warrant under the 'good faith' exception to the exclusionary rule established in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984)." Id.

In reviewing a magistrate judge's determination of probable cause, the Court must give great deference to a magistrate judge's assessment of the facts presented to him. See United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). Thus, the Court is not to conduct a de novo determination of probable cause but, instead, must determine whether the magistrate judge had a substantial basis for his conclusion that probable cause existed at the time the search warrant was issued. Id. at 142; United States v. Hodges, 705 F.2d 106, 108 (4th Cir. 1983). Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Further, an officer's report in his affidavit is "clearly material to the probable cause determination." United States v. Bynum, 293 F.3d 192, 197-98 (4th Cir. 2002) (internal quotations omitted).

Finally, it is, of course, constitutionally required that there be a sufficient nexus between the criminal conduct, the items

to be seized, and the place to be searched. <u>United States v. Anderson</u>, 851 F.2d 727, 729 (4th Cir. 1988). The nexus may be established by the nature of the item and the normal inferences as to where one would keep such items. <u>Id.</u>

### DISCUSSION

Fernard asserts four theories in support of the MOTION: (1) that there was insufficient nexus between the crimes alleged and Fernard's house; (2) that there was insufficient nexus alleged between Faheem, the person under investigation, and Fernard's home; (3) that there was no authority to break into and search the locked safe found in Fernard's home; and (4) that the alleged probable cause for the search was stale.

In a detailed ruling from the bench after the August 5, 2020 hearing, the Court rejected the first two theories (the "nexus arguments"). This opinion addresses Fernard's arguments that there was no authority to search the locked safe and that the probable cause to search the residence at 673 Westover Woods Circle was stale. For the reasons set forth below, those arguments are also rejected.

### I. Opening the Locked Safe

Fernard argues that the executing officers exceeded the scope of the search warrant when they opened a locked safe stored in a room clearly belonging to him, when the warrant was issued

following an investigation of Faheem.   The argument is without merit.

The Fourth Amendment requires that search warrants describe with particularity the places to be searched and the things to be seized.   U.S. Const. amend. XIV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").   Assuming that a warrant describes the place to be searched with adequate precision, the authority to search the fixed premises generally extends to the entire area in which the object of the search may be found, including containers large enough to hold the items identified in the search warrant. As explained by the Supreme Court of the United States in <u>United States v. Ross</u>, 456 U.S. 798 (1982):

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search . . . When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

<u>Id.</u> at 820-21; <u>see also</u>, e.g., <u>United States v. Legall</u>, No. 4:12cr106, 2013 WL 623500, at *8-9 (E.D. Va. Feb. 19, 2013)

(applying Ross to find that the search warrant at issue authorized officers to search containers within a home in which controlled substances might reasonably be found).

First, the search warrant sufficiently describes the place to be searched. See Affidavit for Search Warrant, ECF No. 17-1 (describing the place to be searched as "673 Westover Woods Circle Richmond Virginia 23225 which is located in the city of Richmond.") Indeed, that is undisputed.

Second, the warrant specified items subject to seizure, including "[m]onies, ledgers, documents, cell phones, electronic media storage devices, computers and the data contained within. Scales, firearms, items utilized in the processing, packaging and distribution of illegal drugs. Drugs and drug paraphernalia as defined in the 1970 drug control act of Virginia." Search Warrant at 3, ECF No. 17-1. That too is undisputed. Many of the objects[2] of the search that was authorized by the warrant reasonably could be expected to be found in the safe.

Accordingly, under settled law, the executing law enforcement agents were authorized to search the Westover Woods Circle residence wherever those items listed in the search warrant might reasonably be believed to be found. Davis' affidavit in support

---

[2] For example, money, ledgers, and documents reasonably could be expected to be in the safe. Indeed, the same can be said for drugs and cell phones. All are essential items for those who traffic in drugs.

of the search warrant quite clearly establishes that it was reasonable for the executing agents to suspect that Faheem concealed narcotics and other contraband at Fernard's home; and, the locked safe could have reasonably been expected to hold a number of the items identified in the search warrant. While the search warrant did not give express authority to search the safe, it was reasonable for police officers executing the warrant to believe they would find in the safe the items for which they were authorized to search.   Therefore, the Court rejects Fernard's argument that there was no authority to break into and search the locked safe found in his home.

## II.   The Staleness Argument

Next, Fernard argues that the information furnished in support of the warrant was stale.  The record here proves that the agents began observing Faheem in May of 2019 and continued their surveillance until September of 2019, with the last controlled buy occurring on August 20, 2019.  The agents' surveillance reasonably led them to believe that Faheem was a narcotics distributor who used several residences, including the Westover Woods Circle residence, "to facilitate the distribution, processing and storage of heroin, cocaine and proceeds from the sale of the heroin and cocaine."   Affidavit for Search Warrant ¶ 26, ECF No. 17-1. Between the date of the last controlled buy, August 20, 2019, and

when Davis applied for the search warrant on September 17, 2019,
twenty-eight days lapsed.

Based upon this lapse of time, Fernard argues that, by the
time the warrant was executed, the probable cause supporting the
search of 673 Westover Woods Circle was stale.   In particular,
Fernard asserts that any probable cause that existed at the time
the last controlled buy took place on August 20, 2019 was no longer
fresh when the warrant to search the Westover Woods Circle address
was obtained, on September 17, 2019 (three weeks later), and
executed, on September 26, 2019 (more than a month later).  Def.'s
Mot. to Suppress Evid. at 11-13, ECF No. 13.

The Fourth Amendment "bars search warrants issued on less
than probable cause."  United States v. McCall, 740 F.2d 1331,
1335 (4th Cir. 1984) (citation and internal quotation marks
omitted). As the Fourth Circuit has explained, "Time is a crucial
element of probable cause.  A valid search warrant may issue only
upon allegations of facts so closely related to the time of the
issue of the warrant as to justify a finding of probable cause at
that time." Id. at 1335-36 (citation and internal quotation marks
omitted).  Therefore, evidence seized pursuant to a search warrant
support by "stale" probable cause is inadmissible.   Id.

In United States v. McCall, 740 F.2d 1331 (4th Cir. 1984),
the Fourth Circuit identified the two contexts in which staleness
becomes an issue: (1) when the facts alleged in the search warrant

affidavit established probable cause when the warrant was issued, "but the government's delay in executing the warrant . . . tainted the search;" and (2) when the information on which the search warrant was issued is too outdated to furnish probable cause at the time the search was conducted.  United States v. Lasdulce, 237 F. App.'x 811, 813-14 (4th Cir. 2007) (quoting McCall, 740 F.2d at 1336).

Fernard asserts that it is the second circumstance that requires the suppression of the evidence seized against him. Accordingly, the Court's fundamental concern is whether the facts alleged in Davis' affidavit furnish probable cause to believe that, at the time the search was actually conducted, evidence of criminal activity was located at the premises searched.  United States v. Davis, 276 F. Supp. 2d 522, 526 (E.D. Va. 2003).

It is true that, "[e]ven if probable cause exists at the time the warrant is issued, the passage of time may (without additional newer facts confirming the location of the evidence sought) render the original information insufficient to establish probable cause at [a] later time." Id. (internal quotations omitted).  However, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." McCall, 740 F.2d at 1336 (internal citation and quotation marks omitted).  The Fourth Circuit has upheld search warrants despite the passage of

14

considerable lengths of time between the events in the affidavit and the execution of the search warrant.  See, e.g. United States v. Bosyk, 933 F.3d 319, 330 (4th Cir. 2019) (finding that courts have sustained warrants "issued many months, and even years after the events that gave rise to probable cause" in child pornography cases (internal citations omitted)); United States v. Farmer, 370 F.3d 435, 439-40 (4th Cir. 2004) (finding that nine month old information furnished probable cause for the search of defendant's home in light of the on-going nature of the defendant's alleged criminal activity and the type of evidence at issue).  In making a determination of staleness, the reviewing court must assess "all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized."  McCall, 740 F.2d at 1336.  Applying these principles to the facts in this record necessitates the conclusion that the information supporting the warrant was not stale at the time of its issuance or at the time of its execution, one week later.

First, the length of Faheem's drug trafficking activities observed by officers make it likely that, notwithstanding the passage of four weeks since the last observed illegal transaction, at the time the search of the 673 Westover Woods residence was actually conducted, Faheem's drug distribution activities were still ongoing.  The search warrant was issued following a four-

month long investigation involving three controlled buys on May 9, June 13, and August 20. The investigation included extensive surveillance of Faheem throughout the period when the controlled buys took place and thereafter. The surveillance permitted the task force to determine the likely location for the storage of Faheem's drug supplies and the proceeds of his drug trafficking – the house that was owned by his father and that Faheem often declared as his own residence, even though he stayed sometimes at other locations. It is relevant here that Faheem, a convicted drug dealer, was under investigation for narcotics trafficking – not mere isolated violations of the law, "but criminal activities of a protracted and continuous nature." See United States v. Farmer, 370 F.3d 435, 439 (4th Cir. 2004) (internal quotations omitted). The ongoing nature of Faheem's narcotics distribution, which amounted to three controlled buys over several months, rendered the recency of the information in Davis' affidavit less crucial and "suggested that probable cause was not diminished solely by the passage of time." Id. When an affidavit describes a continuing course of illegal conduct, "the passage of time between the last described act and the application for the warrant becomes less significant." United States v. Myles, No. 5:15cr172, 2016 WL 1688745, at *9 (E.D.N.C. Apr. 26, 2016) (internal citations omitted) (finding that there was probable cause to grant wiretap applications despite the passage of time). Because the officers'

investigation of Faheem demonstrated that his narcotics distribution spanned the course of several months, it is unlikely that Faheem's criminal activity was suddenly abandoned. That is particularly so considering the drug dealing evinced by his previous convictions.

Second, the very nature of the unlawful activity, the business of drug trafficking, makes it unlikely that the extensive activity observed from May through August had abated when the search warrant was executed. See United States v. Byars, 762 F. Supp. 1235, 1239 (E.D. Va. Apr. 24, 1991) (finding that "the nature of the unlawful activity—drug trafficking—makes staleness unlikely" given the multiple drug transactions over the couple of months leading up to the time of the search). Drug trafficking is "the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." Myles, 2016 WL 1688745, at *10.

Last, the "nature of the property to be seized" pursuant to the warrant also supports a finding of probable cause. The search warrant authorized the search for, among other things, monies, documents, ledgers, and electronic media storage devices. Search Warrant at 3, ECF No. 17-1. These are "'records and personal papers which are not ordinarily destroyed or moved from one place to another.'" United States v. Sandoval, No. 1:11cr407, 2011 WL 5869603, at *8 (E.D. Va. Nov. 22, 2011) (quoting United States v.

*Rhynes*, 196 F.3d 207, 234 (4th Cir. 1999)). In addition to these items, the search warrant authorized the seizure of "scales, firearms, items utilized in the processing, packing and distribution of illegal drugs." The lapse of twenty-eight days between the last controlled buy, August 20, 2019, and when Davis applied for the search warrant, September 17, 2019, does not change the likelihood that evidence of Faheem's narcotics distribution would be located in Fernard's house because "evidence of drug trafficking may remain in a location for weeks or months at a time." *United States v. Hodges*, No. 3:17cr184, 2018 WL 934616, at *4 (S.D. W. Va. Feb. 16, 2018) (citing *United States v. Zayas-Dias*, 95 F.3d 105, 116 (1st Cir. 1996)); *see also United States v. Springer*, 2009 WL 1048687, at *5 (N.D. W. Va. Apr. 20, 2009) (stating that the nature of the property to be seized items typically involved in drug dealing supported a finding of probable cause).

The search warrant at issue was not executed until September 26, 2019, the day on which Faheem was arrested and found to be in possession of one ounce of heroin and two ounces of cocaine. Report of Investigation at 1, ECF No. 19-1. The record contains no explanation for why the warrant was obtained when it was or why it was executed a week after it was obtained. However, the record shows that, after the last controlled buy, the task force continued surveillance of Faheem for about three to four weeks before

applying for the warrant and that the officers' additional surveillance was further evidence of Faheem's distribution activities. It was reasonable for police officers to have taken the course that they did; and, importantly, none of the information offered in support of the search warrant appears to have been rendered less valid during that period.

Fernard does not argue otherwise. His objection is based solely on the passage of time (the counting of days). As explained above, this is not sufficient to demonstrate that the supporting information was stale when the warrant was issued. And, further, any doubt remaining regarding the staleness of the evidence should be "resolved in favor of upholding the warrant." <u>Bernstein v. United States</u>, 990 F. Supp. 428, 436 (D.S.C. 1997) (citing <u>United States v. Sleep</u>, 54 F.3d 303 (7th Cir. 1995)).

## III. Good Faith

In its response to Fernard's opening brief, the United States raised the so-called "good faith" defense as a contingent alternative justification for upholding the search if probable cause was found wanting. In his reply, Fernard countered the government's position with the assertion that the good faith exception should not apply because officers "intentionally omitted" material information in apply for the search warrant. DEF.'S REPLY TO SUPRESS EVID. at 6, ECF No. 19.

At the hearing, the parties agreed that, because the Court had denied the MOTION on its merits, there was no need to consider the "good faith" argument advanced by the United States. However, considering that the issue has been fully briefed, the Court concludes that it is appropriate to resolve it as an alternative holding. In that way, if there is an appeal, the record will be complete.

If a search is invalidated under the Fourth Amendment for lack of probable cause, "the exclusionary rule will not always be the appropriate remedy." United States v. Church, No. 3:16cr92, 2016 WL 6123235, at *4 (E.D. Va. Oct. 18, 2016). In cases in which probable cause is found not to exist, the court may nevertheless "uphold the warrant under the 'good faith' exception to the exclusionary rule established in United States v. Leon, 468 U.S. 897 (1984)." United States v. Harris, 215 F. App'x 262, 269 (4th Cir. 2007). The good faith exception "permits officers to rely on a warrant issued by a magistrate even if such warrant is defective, unless: (1) the affidavit contains a 'knowing or reckless falsity'; (2) the magistrate acted as a 'rubber-stamp' for police; (3) the affidavit is 'so lacking in indicia of probable cause' that 'belief in its existence is entirely unreasonable'; or (4) that warrant is so facially deficient it cannot be reasonably relied upon." See United States v. Turner, 491 F. Supp. 2d 556, 562-63 (E.D. Va.

2007) (quoting *United States v. Leon*, 468 U.S. 897, 914–15, 923 (1984)).

The argument advanced by Fernard is that:

> The affiant intentionally omitted any mention of Faheem Jordan's places of residence and led the judge reviewing the search warrant to believe that Faheem Jordan primarily resided at 673 Westover Woods. This affiant knew from the notes taken during surveillance show that Faheem Jordan primarily resided at 1629 Treewood Lane and occasionally stayed at Homewood Suites. There is no indication that Faheem Jordan resided at 673 Westover Woods at any point during this investigation. In the absence of such pertinent information, the judge easily found a nexus between Westover Woods, the address presented in the Affidavit as Faheem Jordan's primary residence, and Faheem Jordan's criminal behavior. Accordingly, the judge would be naturally more inclined to believe that the controlled buys established probable cause for the search of 673 Westover Woods.

DEF.'S REPLY TO SUPRESS EVID. at 6-7, ECF No. 19 (emphasis added)

To prevail on this theory, Fernard must show:

> (1) that the information was omitted "with the intent to mislead the magistrate or . . . with reckless disregard of whether it would make the affidavit misleading;" and (2) that inclusion of the omitted information in the affidavit was material to the determination of probable cause. *United States v. Lull*, 824 F.3d 109, 115-20 (4th Cir. 2016). *See also United States v. Wharton*, 840 F.3d 163, 167 (4th Cir. 2016) (affirming denial of suppression motion following *Franks* hearing where recklessly omitted information would not have defeated probable cause); *United States v. Clenney*, 631 F.3d 658, 664-65 (4th Cir. 2011) (affirming denial of motion for *Franks* hearing based on omissions which were neither

> "designed to mislead the magistrate" nor
> "material.

GOVERNMENT'S RESP. TO DEF.'S MOT. TO SUPPRESS at 15, ECF No. 17. Nothing in the record permits a finding that Davis omitted information with the intent to mislead the magistrate or with reckless disregard for whether the magistrate might be misled. First, contrary to Fernard's assertion, Davis' affidavit did include information about Faheem's link to Homewood Suites. Affidavit for Search Warrant ¶¶ 19, 20, 23 ECF No. 17-1 ("In an attempt to determine [Faheem's] association with the [Homewood Suites] hotel, law enforcement obtained guest registry information from hotel management and learned that [Faheem] was a registered guest in room 806.").

Second, while Fernard does not specify what information he believes Davis intentionally omitted from his affidavit, it is not apparent what additional information could have been included. Davis' affidavits in support of the search warrant for the 673 Westover Woods Circle residence and the Treewood Lane address are almost identical. However, two pieces of additional information were included in Davis' affidavit in support of the search warrant for the Treewood Lane address. Davis states:

> During surveillance operation within the last
> week, law enforcement has observed [Faheem]
> operating the blue 2011 BMW 4 door bearing
> Virginia registration UUC-9427 registered in
> his fathers name. During these surveilances,
> [Faheem] has been observed meeting with

22

**CRITICAL**

> multiple individuals in parking lots and the
> side of the road for less than a minutes.
> [Faheem] has also been observed on multiple
> occasions at 1629 Treewood Lane, North
> Chesterfield, Virginia 23235 with and without
> his girlfriend, entering and exiting the side
> door of the residence. The blue BMW has been
> observed parked at the same residence on
> multiple occasion during the same time frame.
> 1629 Treewood Lane is a rental property in
> which the utilities are listed under the name
> Fernando JORDAN ([Faheem]'s father) effective
> September 19, 2019.

Affidavit in Support of Treewood Lane Search Warrant ¶ 26, ECF No. 22-2. But, both the effective date of the utilities service at the Treewood Lane address and the surveillance referenced in Fernard's argument occurred after the issuance of the 673 Westover Woods Circle search warrant. Because the search warrant at issue was obtained on September 17, 2020, it would have been impossible for Davis to have included information about the Treewood Lane utilities in Fernard's name, which became effective September 19, 2019, or the surveillance conducted the week following the date the 673 Westover Woods Circle search warrant was obtained.

Absent anything in the record indicating that Davis intentionally omitted relevant information in his affidavit, the Court finds that, even if probable cause is found to be lacking, the good faith exception prevents the application of the exclusionary rule here.

## CONCLUSION

For the reasons set forth above, and for the reasons stated on the record during the August 5, 2020 hearing, the DEFENDANT'S COMBINED MOTION AND MEMORADUM TO SUPPRESS EVIDENCE (ECF No. 18) is denied.

It is so ORDERED.

                        /s/         REP
                        _____
                        Robert E. Payne
                        Senior United States District Judge


Richmond, Virginia
Date:  September  10, 2020